**THE DANN LAW FIRM, PC**
Javier L. Merino
1520 US Highway 130, Suite 101
North Brunswick, NJ 08902
Telephone: 216-373-0539
Facsimile: 216-373-5036
notices@dannlaw.com
*Attorney for Plaintiffs Estate of Reina Abreu and Jorge Abreu*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ESTATE OF REINA ABREU and JORGE ABREU,**<br><br>Plaintiffs,<br><br>vs.<br><br>**BANK OF AMERICA, N.A.,**<br><br>Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Estate of Reina Abreu, by and through her court-appointed administrator, Jorge Abreu, and Jorge Abreu, individually (collectively, "Plaintiffs"), through counsel, state as follows for their Complaint against Defendant Bank of America, N.A. ("BANA"):

## WHY PLAINTIFFS BRING THIS CASE

1.     Jorge Abreu ("Mr. Abreu") sought to sell his mother's home as part of his duties as administrator of the Estate of Reina Abreu (the "Estate"). As part of this process, Mr. Abreu sought to obtain a payoff statement from BANA, the mortgage servicer on the home, to calculate the amount owed on the mortgage. BANA has continuously refused to provide the payoff. Due to BANA's egregious errors, Mr. Abreu is unable to sell the home. Thereafter, Mr. Abreu repeatedly pleaded with BANA to fix its errors. BANA refused, preventing Mr. Abreu from

being able to close on the sale of the home and leaving Mr. Abreu no choice but to bring the instant suit.

## INTRODUCTION, PARTIES, JURISDICTION, AND VENUE

2.      In 2012, Reina Abreu ("Ms. Abreu") passed away. Her son, Mr. Abreu, was appointed administrator of her estate.

3.      Mr. Abreu is a natural person who resides in New Milford, NJ. Ms. Abreu was a natural person who resided in 37-50 87th Street, Jackson Heights, NY 11372 (the "Home"). Ms. Abreu maintained the Home as her primary, principal residence, and maintained it until her passing in 2012.

4.      Defendant BANA is a bank headquartered in Charlotte, North Carolina.

5.      BANA is the servicer of a note executed by Ms. Abreu (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan"). The Loan is attached as **Exhibit 1**.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Truth in Lending Act, 12 U.S.C. §§ 1601, *et seq*. ("TILA")

7.      This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

8.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## TILA AND REGULATION Z

9.      TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) business days regardless of

circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

10.     In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—which amended TILA.

11.     The CFPB's TILA Mortgage Servicing Final Rules—known as "Regulation Z" and codified as 12 C.F.R. § 1026.1, *et seq.*—were issued on January 17, 2013, and became effective on January 10, 2014.

12.     Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

13.     Regarding payoff statements, Regulation Z provides that:

In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

14.     The Estate asserts claims for relief against BANA for breaches of the specific rules under TILA, as set forth, *infra*.

## RESPA AND REGULATION X

15.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

16.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

17.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

18.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

19.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

20.     Plaintiffs asserts claims for relief against BANA for breaches of the specific rules under RESPA, as set forth, *infra*.

## STATEMENT OF FACTS

21.     On or about April 5, 2006, Ms. Abreu entered into the Loan with BANA.

22.     On March 7, 2012, Ms. Abreu passed away. In February 2020, Mr. Abreu obtained letters of administration for the Estate through the Queens County Surrogate's Court. A

copy of the decree appointing Mr. Abreu as administrator and the letters of administration is attached as **Exhibit 2**.

23.    The Estate, through Mr. Abreu, sent correspondence to BANA dated December 21, 2021, via Certified Mail [Tracking No. 70211970000099479731] captioned "Request for information pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" ("Payoff Request #1"). A copy of Payoff Request #1 is attached as **Exhibit 3**.

24.    The Estate, through Payoff Request #1, requested that BANA provide a copy of a payoff statement for the Loan, providing:

> Pursuant to 12 C.F.R. § 1026.36(c)(3), you "must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date" *within a reasonable time* after receipt of this request. Under no circumstances are you to fail to provide the requested payoff statement *within seven (7) business days* of receipt of this request.

*See* Exhibit 3.

25.    BANA responded to Payoff Request #1 through correspondence dated January 4, 2022 and stated, in relevant part:

> We haven't received the court approved Executor of Estate document required to allow us to release information.
>
> ### What you can do
>
> We're unable to respond to the request and consider this inquiry closed. If you're able to obtain the information and/or documentation above, please send with your correspondence to the address below:

A copy of the response is attached as **Exhibit 4**.

26.    The Estate, through Mr. Abreu, then sent correspondence to BANA dated January 11, 2022, via Certified Mail [Tracking No. 70212720000028787191] captioned "Request for information pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant

to 12 C.F.R. § 1026.36(c)(3)" ("Payoff Request #2"). A copy of Payoff Request #2 is attached as **Exhibit 5**.

27.    Through Payoff Request #2, the Estate repeated its request for a payoff statement and, to comply with BANA's January 4, 2022 correspondence, also enclosed Letters of Administration issued by the Queens County Surrogate's Court. *See* Exhibit 5.

28.    BANA responded to Payoff Request #2 through correspondence dated January 28, 2022, again refused to provide the payoff requested, and stated, in relevant part:

> We received your letter dated January 11, 2022, and want to share what we found.
>
> As advised in our previous letter sent to you dated January 4, 2022, a copy of which is enclosed, we still haven't received the court approved Executor of Estate document required to allow us to release information.
>
> The Letters of Administration included with your letter cannot be accepted as valid because it is a copy and, as stated on the copy itself, it is not valid without the Raised Seal of the Queens County Surrogate's Court.

A copy of the response is attached as **Exhibit 6**.

29.    The Estate, through Mr. Abreu, then sent correspondence to BANA dated February 15, 2022, via Certified Mail [Tracking No. 70201290000141258811] captioned "Request for information pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" ("Payoff Request #3"). A copy of Payoff Request #3 is attached as **Exhibit 7**.

30.    Through Payoff Request #3, the Estate again repeated its request for a payoff statement and, in compliance with BANA's correspondence dated January 4, 2022 nad January 28, 2022, also enclosed the Decree Appointing Administrator issued by the Queens County Surrogate's Court. *See* Exhibits, 4, 6, and 7.

31.    BANA responded to Payoff Request #3 through correspondence dated February 28, 2022, ***again*** refused to provide the payoff requested, and stated, in relevant part:

As advised in our previous letter sent to you dated January 4, 2022, a copy of which is enclosed, we still haven't received the court approved Executor of Estate document required to allow us to release information.

The Decree Appointing Administrator, which was included with your letter, is not an acceptable document as we require the Letters of Administration that was issued. You previously submitted the Letters of Administration with your letter dated January 11, 2022; however, as advised in our enclosed letter sent to you dated January 28, 2022, we could not accept the document as valid because it was a copy and, as stated on the copy itself, it is not valid without the Raised Seal of the Queens County Surrogate's Court.

32.     Accordingly, Mr. Abreu, on behalf of the Estate and individually as a successor in interest, sent correspondence to BANA dated March 31, 2022, via Certified Mail captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(6) for failing to respond to a borrower's request for information issued pursuant to 12 C.F.R. § 1024.36" (the "NOE"). A copy of NOE #1, including the USPS Tracking Receipt evidencing proof of receipt, is attached as **Exhibit 8**.

33.     Through NOE #1, Mr. Abreu advised BANA that BANA repeatedly failed to provide the payoffs requested by and through Payoff Request #2 and #3. *See* Exhibit 8.

34.     Through correspondence dated April 12, 2022, BANA responded to NOE #1 and stated, in relevant part:

## We received your letter dated March 31, 2022, and want to share what we found.

As advised in our previous letter sent to you dated January 4, 2022, a copy of which is enclosed, we still haven't received the court approved Executor of Estate document required to allow us to release information.

As advised in our previous letters sent to you dated January 28, 2022, and February 28, 2022, copies of which are enclosed, we cannot accept the Letters of Administration as a valid document because, as stated on the copy itself, it is not valid without the Raised Seal of the Queens County Surrogate's Court. In order for us to accept the Letters of Administration as valid, we need to receive a copy with the Seal showing.

A copy of the response is attached as **Exhibit 9**.

35.     On or about May 3, 2022, Mr. Abreu, on behalf of the Estate and individually as a successor in interest, submitted another notice of error ("NOE #2") to BANA at the Designated Address via Certified Mail. A copy of NOE #2 a is attached as **Exhibit 10**.

36. Through NOE #2, Mr. Abreu advised BANA that it committed errors related to the servicing of the Loan by its repeated refusals to recognize Mr. Abreu as a successor-in-interest and its repeated refusals to provide the requested payoffs.

37. As of this date, BANA has refused to issue a payoff statement on the Home.

**IMPACT AND DAMAGE TO THE ESTATE OF REINA ABREU**

38. Due to BANA's actions in repeatedly refusing to provide the requested payoff, Plaintiffs have been unable to sell the Home's co-op shares.

39. BANA's actions further caused Plaintiffs to incur attorneys' fees and costs in attempts to rectify this issue which have yet to be successful.

40. BANA directly and proximately caused the following damages to Plaintiffs:

   a. Plaintiffs have been deprived of the ability to sell the Home's co-op shares and receive the funds from the same;

   b. The BANA Loan continues to incurr fees, interest, and costs while the sale is delayed for which Plaintiffs will be responsible or which will otherwise negative affect the equity in the Home to which they are entitled;.

   c. Plaintiffs have suffered time loss of the use of funds from the delayed sale of the Home; and,

   d. Plaintiffs have incurred fees, costs, and expenses, legal and otherwise, in sending Payoff Request #1, Payoff Request #2, Payoff Request #3, NOE #1, and NOE #2, each to which the Estate of Reina Abreu has not received a proper response.

41.     Throughout this entire ordeal, Plaintiffs simply wanted the payoff on the Home in order for Mr. Abreu to effectuate the sale of the Home on the Estate's behalf and pay off the Loan in full.

## COUNT ONE: AGAINST BANA

### (Violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3)

42.     Plaintiffs restate and incorporate all of his statements and allegations contained in paragraphs 1 through 42, in their entirety, as if fully rewritten herein.

43.     The Loan is a closed-end consumer credit transaction secured by his respective dwellings as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

44.     As such, BANA is subject to the requirements of TILA and Regulation Z in relation to the Loan.

45.     Mr. Abreu, on behalf of the Estate, submitted three (3) written requests to BANA seeking an accurate payoff balance for their loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3), specifically Payoff Request #1, Payoff Request #2, and Payoff Request #3 (collectively, the "Payoff Requests"). *See*, Exhibits 3, 5, and 7.

46.     TILA provides that a creditor or servicer of a home loan shall provide an accurate payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

47.     This provision of TILA is enforced against creditors and servicers in Regulation Z (and, as noted above, is incorporated into the requirements of Regulation X and RESPA). Specifically, regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

48. On or before January 11, 2022, either Mr. Abreu or their representative submitted a written request to BANA for a payoff statement which enclosed the Letters of Administration. *See* Exhibit 5.

49. Through its January 28, 2022 correspondence, BANA refused to provide the requested payoff statement even though the seal was clearly affixed to the Letters of Administration. Accordingly, BANA violated the duties owed to Mr. Abreu pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

50. On or before February 15, 2022, either Mr. Abreu or their representative submitted a renewed written request to BANA for a payoff statement and enclosed additional documentation evidencing Mr. Abreu's status as administration of the estate - a Decree Appointing Administrator, signed by Judge Peter J. Kelly, Surrogate Judge of Queens County, *again* affirming that Mr. Abreu was named administrator of Ms. Abreu's estate. *See* Exhibit 7.

51. Through its February 28, 2022 correspondence, BANA ***still*** refused to provide the requested payoff statement despite the additional proof of Mr. Abreu's status as administrator of the estate. *See* Exhibit 8. Accordingly, BANA ***again*** violated the duties owed to Mr. Abreu pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

52.     BANA's violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) harmed the Estate in several ways, as specified below:

a.   First, "a core object of" TILA's disclosure requirements is the protection of "a consumer's concrete interest in avoiding the uninformed use of credit," such that the inaccurate Payoff Statements harmed the Estate's "concrete interest in the informed use of credit." *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2nd Cir. 2016). Indeed, BANA's refusal to provide the requisite payoff statements in response to each of the Payoff Requests jeopardized Mr. Abreu's ability to fulfill his duties as Administrator of the Estate and complete the sale of the Home co-op shares on behalf of and in the interests of the Estate;

b.   Second, the Estate was harmed because it incurred the expenses associated with sending the Payoff Requests—such as their time, postage, attorneys' fees, etc.—but they did not receive accurate information to which it was legally entitled pursuant to TILA and Regulation Z. Because BANA failed to meet its obligations under TILA and Regulation Z, the time and expense associated with the Estate's submission of the Payoff Requests "metamorphosed into damages." *E.g.*, *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 728 (S.D. Ohio 2014); *Justice*, 2015 WL 235738, at *19; *McMillen v. Resurgent Capital Services, L.P.*, 2015 WL 5308236, at *10 (S.D. Ohio 2015); *Dale v. Selene Fin. LP*, 2016 WL 6024580, at *3 (N.D. Ohio 2016).

c.   Finally, the Estate incurred additional damages in the form of expenses associated with sending NOE #1 and NOE #2 (collectively, the "NOEs") pursuant to 12 C.F.R. § 1024.35(a) and 12 U.S.C. § 2605(E)(1)(B)—such as Mr. Abreu's time as

well as postage, attorneys' fees, etc.—regarding BANA's failure to issue the payoff statements. The NOEs would not have been necessary but for BANA's failure to provide accurate payoff statements in response to the Payoff Requests as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3).

53.    For the reasons stated above, the Estate was harmed as a result of the actions of BANA.

54.    As a result of the actions of BANA, it is liable to the Estate for actual damages, statutory damages, and attorneys' fees and costs. 15 U.S.C. §§ 1640(a)(1)-(3); 15 U.S.C. § 1641.

## COUNT TWO
### [Violations of RESPA]

**[Violations of 12 C.F.R. §§ 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) for failing to properly respond to notices of error]**

55.    Plaintiffs restate and incorporate all of his statements and allegations contained in paragraphs 1 through 42, in their entirety, as if fully rewritten herein.

56.    12 C.F.R. § 1024.35(a) provides:

A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

57.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower"

58.    Pursuant to 12 C.F.R. § 1024.35(b)(6), the term "error" refers to the failure to provide an accurate payoff balance upon a borrower's request in violation of section 12 C.F.R. § 1026.36(c)(3).

59.    12 C.F.R. § 1024.35(e)(3)(i)(C) provides that a servicer must respond to a notice of error from a borrower within thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, of receipt.

60.    12 C.F.R. § 1024.35(e)(3)(ii) provides that a servicer may extend the time period for responding by an additional fifteen (15) days, excluding legal public holidays, Saturdays, and Sundays, if before the end of the thirty (30) day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing.

61.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

62.    12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

63.    Standard servicer duties are those "typically undertaken by servicers in the ordinary course of business." 78 Fed. Reg. 10696, 10739.

64.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of

ConsumerFinancial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

65.     NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) because it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See* Exhibit 8.

66.     BANA received NOE #1 at its designated address for receipt of such. *See* Exhibit 8.

67.     Through NOE #1, Plaintiffs alleged that BANA committed errors in relation to the Loan pursuant to 12 C.F.R. § 1024.35(b)(6) by failing to respond to the various written requests for payoff statements. *See* Exhibit 8.

68.     NOE #1 Response failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). *See* Exhibit 9.

69.     BANA through NOE #1 Response did not comply with 12 C.F.R. § 1024.35(e)(1)(A) as it did not admit that any errors alleged through NOE #1 occurred. *See* Exhibit 9.

70.     BANA through NOE #1 Response did not comply with 12 C.F.R. § 1024.35(e)(1)(B) as the contents of NOE #1 Response clearly indicate that BANA did not perform a reasonable investigation into the alleged errors prior to claiming that no errors occurred. See Exhibit 9.

71.     Specifically, BANA, through NOE #1 Response, claimed it was justified in refusing to respond to the various requests for payoff because the letters of administration did not possess a "Raised Seal of the Queens County Surrogate's Court." Had BANA conducted a

reasonable investigation into NOE #1, it would have recognized that it was placing onerous requirements on Plaintiffs = to have them prove that Mr. Abreu is the administrator of the Estate as Mr. Abreu submitted *multiple* documents evidencing his status as administrator of Ms. Abreu's estate.

72.     BANA's failure to properly respond to NOE #1 constitutes clear, distinct, and separate violations of 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

73.     BANA's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and the rights of other similarly situated borrowers and in violation of BANA's obligations under Regulation X of RESPA.  BANA's pattern and practice as such is evidenced by their refusal to appropriately investigate, respond to, and correct the errors Plaintiffs alleged through NOE #1.

74.     BANA's failure to properly investigate and respond to NOE #1 by and through the Response to NOE #1 directly necessitated the preparation and sending of NOE #2, causing Plaintiffs to incur the fees, costs, and expenses associated with such.

75.     Plaintiffs have suffered actual damages as a direct and proximate result of BANA's actions including incurring legal fees and expenses in the preparation and mailing of NOE #2, other legal expenses, anxiety, and emotional distress, as further described, *supra*.

76.     As a result of BANA's actions, it is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

77.     Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3)

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Estate of Reina Abreu respectfully requests that this Court enter an order granting Judgment against Defendant Bank of America, N.A., as follows:

    A.  For statutory damages of no less than Four Hundred Dollars ($400.00) and up to Four Thousand Dollars ($4,000.00) for each the violations of TILA as contained in Count One;

    B.  For statutory damages of up to Two Thousand Dollars ($2,000.00) for each and every separate violation of RESPA as contained in Count Two;

    C.  For actual damages, reasonable attorneys' fees and costs as to Counts One and Two; and

    D.  Such other relief which this Court may deem appropriate.

**WHEREFORE** Plaintiff Jorge Abreu respectfully requests that this Court enter an order granting Judgment against Defendant Bank of America, N.A., as follows:

    A.  For statutory damages of up to Two Thousand Dollars ($2,000.00) for each and every separate violation of RESPA as contained in Count Two;

    B.  For actual damages, reasonable attorneys' fees and costs as to Count Two; and

    C.  Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Javier L. Merino
Javier L. Merino #078112014
**DANN LAW**
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Phone: 216-373-0539
Fax: 216-373-0536
notices@dannlaw.com
*Attorney for Plaintiff Estate of Reina Abreu and Jorge Abreu*

## JURY DEMAND

Plaintiffs Estate of Reina Abreu and Jorge Abreu hereby respectfully demand a trial by jury on all such claims that may be so tried.

/s/ Javier L. Merino
Javier L. Merino #078112014
**THE DANN LAW FIRM, PC**